IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

LIOUDMILA PETROVNA NICHOLS,

    Plaintiff,

v.

GENERAL ELECTRIC COMPANY,

Serve:
    CT Corporation System,
    Registered Agent
    4701 Cox Road, Suite 285
    Glen Allen, VA 23060

and

GENERAL ELECTRIC INTERNATIONAL, INC. D/B/A GE DIGITAL,

Serve:
    CT Corporation System,
    Registered Agent
    4701 Cox Road, Suite 285
    Glen Allen, VA 23060

    Defendants.

Case No:  7:20CV00748

JURY TRIAL DEMAND

## COMPLAINT

COMES NOW, Lioudmila Petrovna Nichols ("Ms. Nichols" or "Plaintiff"), by counsel, and states as her Complaint against Defendant General Electric Company and Defendant General Electric International, Inc. d/b/a GE Digital (collectively, "GE" or "Defendants"), the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal

1

questions presented by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and as codified under 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 through 634 ("ADEA"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2. Venue is appropriate as the acts and/or omissions of Defendants from which the causes of action arise occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

3. Due to their contacts within the Commonwealth of Virginia, Defendants avail themselves to the jurisdiction of this Court.

4. At all times relevant to this Complaint, GE is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. § 2000e(a), an "employer" within the meaning of both Title VII, Section 701, 42 U.S.C. § 2000e(b) and the ADEA, and engaged in an industry affecting commerce which had 15 or more employees for each working day in each of twenty or more calendar weeks during the year of Plaintiff's termination, or the preceding calendar year.

5. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 31, 2019. *See* Plaintiff's EEOC Charge, No. 438-2020-00148, attached hereto as **EXHIBIT A**.

6. In November of 2019, EEOC Investigator Support Assistant Dominese Withers advised Plaintiff's counsel that the case would be assessed based on the information in the Charge. *See* Plaintiff's counsel's 2019 communications with Ms. Withers, attached hereto as **EXHIBIT B**.

7. Subsequent to these 2019 communications, Plaintiff's counsel received no further communications from the EEOC regarding Plaintiff's Charge.

8. On September 17, 2020, after more than 180 days had elapsed after filing the charge, Plaintiff authorized counsel to request a Notice of Right to Sue. As documentation concerning the charge could not be found on the EEOC online Portal, counsel emailed Ms. Withers and EEOC Director Daron Calhoun to inquire about the status of Plaintiff's Charge. *See* Plaintiff's counsel's September of 2020 communications with Ms. Withers and Mr. Calhoun, attached hereto as **EXHIBIT C**.

9. On September 17, 2020, Plaintiff's counsel received an email from EEOC Investigator Carolyn King stating that Plaintiff's matter had been closed and a Notice of Right to Sue had been issued. *See* Plaintiff's counsel's communications with Ms. King, attached hereto as **EXHIBIT D**.

10. When Plaintiff's counsel again logged on to the EEOC portal on September 18, 2020, a different notification than the day prior appeared. Specifically, the charge was now noted on the portal but was inaccessible and the information provided stated that the case had been closed more than 90 days prior.

11. As of September of 2020, Plaintiff's counsel had neither received a letter via the United States Postal Service ("USPS") or by any other means, nor any other related communication from the EEOC, concerning the status of this matter or indicating that a Notice of Right to Sue had been issued. *See* Affidavit of Witness Thomas E. Strelka, Esq., attached hereto as **EXHIBIT E**.

12. Similarly, as of September of 2020, Plaintiff had neither received a letter via the USPS, nor any other related communication from the EEOC, indicating that a Notice of Right to Sue had been issued in this matter. *See* Affidavit of Witness Lioudmila P. Nichols, attached hereto as **EXHIBIT F**.

13. Plaintiff's counsel memorialized the lack of any receipt of the Notice of Right to Sue letter with the EEOC in a letter to Director Calhoun dated October 5, 2020. *See* October 5, 2020 email to D. Calhoun with attached letter from T. Strelka, attached hereto as **EXHIBIT G**.

14. On October 7, 2020, at Plaintiff's counsel's request, Plaintiff's counsel received an email from Ms. King attaching a Dismissal and Notice of Rights ("Notice") from the EEOC for this matter, which was dated November 19, 2019. *See* October 7, 2020 email from C. King to T. Strelka with attached November 19, 2019 Notice, attached hereto as **EXHIBIT H**.

15. Of note, although Plaintiff's counsel's office address generally is listed in communications from the EEOC, including Dismissal and Notice of Rights documents, this Notice does not reference Plaintiff's counsel or the associated Roanoke, Virginia office address, which further supports Plaintiff's contention that the Notice was not mailed to Plaintiff's counsel prior to Plaintiff's requests in October of 2020. *See* redacted examples of recent EEOC Dismissal and Notice of Rights documents mailed to, and received by, Plaintiff's counsel, attached hereto as **EXHIBIT I**.

16. Plaintiff received the Notice from the EEOC on October 7, 2020, and files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.[1]

---

[1] Plaintiff "should not lose the right to sue because of fortuitous circumstances or events beyond her control which delay receipt of the EEOC's notice." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322 (4th Cir. 2011). "Courts in the Fourth Circuit must strictly construe the 90-day time limit in which a plaintiff must file suit following receipt of a right-to-sue letter. The time limit begins when either the plaintiff or the plaintiff's attorney receives the right-to-sue letter." *Walsh v. Greater Richmond Ass'n for Retarded Citizens*, Civil Action No. 3:18cv292, 2018 U.S. Dist. LEXIS 211382, at *11 (E.D. Va. Dec. 14, 2018) (internal citations omitted). In *Walsh*, the Court, noting that "a clear dispute exists as to when, or if, the plaintiff received the EEOC Notice", concluded that the plaintiff presented "contrary evidence" that "neither she nor her counsel received the EEOC Notice" when it was purportedly issued, and accordingly denied the defendant's Motion to Dismiss for failure to exhaust administrative remedies. *Id.* at *10 - *12.

## II. THE PARTIES

17.     Ms. Nichols, a resident of Roanoke, Virginia, and currently 58 years of age,[2] is female and of Russian national origin.

18.     GE is an American multinational conglomerate corporation headquartered in Schenectady, New York that produces and distributes household appliances. GE Digital, a subsidiary of GE, produces digital product APM (Asset Performance Management) software. GE maintains an office located at 207 Bullitt Avenue SE, Roanoke, VA 24013.

## III. FACTUAL ALLEGATIONS

19.     Ms. Nichols was hired by Meridium, Inc. ("Meridium"), on or about July 21, 2014, to work in the company's Roanoke, Virginia office and, at all times relevant, was employed as a Software Engineer.

20.     On or about September 2016, Meridium was acquired by GE Digital, a subsidiary of GE.

21.     Ms. Nichols continued to work on a consistent, full time basis as a GE software engineer until her unlawful termination from employment in 2019.

22.     During Ms. Nichols' employment with GE, her work performance was always excellent and met or exceeded her employer's expectations.

23.     Additionally, Ms. Nichols received positive work performance reviews, was never disciplined, and received monetary bonuses directly related to her job performance.

24.     However, upon information and belief, Ms. Nichols was subjected to sex, age, and national origin discrimination during her employment with GE.

---

[2] Ms. Nichols' exact date of birth is not included due to privacy concerns, and due to filing requirements as per the United States District Court Western District of Virginia Local Rules.

25. Indeed, upon information and belief, Ms. Nichols' GE supervisors held a discriminatory animus against Ms. Nichols due to her sex, age, and/or national origin and, consequently, subjected her to discrimination – ultimately resulting in her termination from employment.

26. Specifically, Ms. Nichols worked on a GE engineering team comprised predominantly of male, non-foreign nationals who are younger than Ms. Nichols.

27. During her employment, Ms. Nichols' team often ostracized her (and other female software developers) and excluded her from company outings and events.

28. Ms. Nichols' Team Leader, Gregory King, refused to adequately respond to Ms. Nichols' work-related guidance or requests for additional instructions/information. Mr. King regularly advised Ms. Nichols that he was just "too busy", but she observed that he never made this excuse to younger, male team members when they asked Mr. King for guidance/information. Indeed, Mr. King rushed to help these male employees, and then engaged in frivolous conversations concerning cartoons, movies, politics, and sports for long periods of time (sometimes for hours), thus belying his contention that he was "too busy" to assist Ms. Nichols.

29. Mr. King also regularly grimaced and made faces at Ms. Nichols and raised his voice to her on multiple occasions. Upon information and belief, Mr. King did not communicate in this manner with his male subordinates.

30. Ms. Nichols also noticed a disturbing and offensive trend concerning male co-workers refusing to acknowledge her contributions to the software development and refusing to communicate with her. For example, as other teams used the web components and widgets developed by Ms. Nichols' team, sometimes they would have a question as how to properly incorporate that software in their final product. When a question would

arise about the software/code written by Ms. Nichols (note that the name of the developer is usually clearly stated in the code and in the documentation), the questioning male employee would purposefully circumvent Ms. Nichols and pose the question to Ms. Nichols' male team members (even though those male team members had not written the software/code).

31. Additionally, Team Leader Jia Ma, who is male, regularly assigned unfavorable tasks to Ms. Nichols. For example, at all times relevant during Ms. Nichol's employment, the GE APM software code was cumbersome and generally considered to be not well written. In addition, during the transition time after Meridium was acquired by GE, different techniques, software libraries, and approaches were used by each team. In regard to the software libraries, the GE APM team used Polymer and angular JS javascript libraries, which were not utilized by the Meridium team, so these software libraries were unfamiliar to the Meridium team. Because any developer working on projects involving the GE APM code required that developer to navigate through unfamiliar code while simultaneously learning new techniques, it was singularly time consuming and frustrating. Ms. Nichols was required to handle the bulk of these assignments while her younger, non-foreign national, male co-workers, received more streamlined assignments.

32. Ms. Nichols was also subject to negative commentary concerning Russia and the Russian language. As an example, during a group telephone conference, Mr. Ma complained about the fact that one of the new GE customers was a company based in Russia, and, accordingly, the team would be required to translate the software for this particular company. Mr. Ma indicated, in a disgusted tone to the group, that he did not know why GE even needed this Russian company, and suggested that the Russian

7

language was obsolete. Upon information and belief, Mr. Ma was aware of Ms. Nichols' national origin.

33. On or about April 10, 2019, Ms. Nichols was informed of a Reduction in Force ("RIF"), which was used as a pretext to affect the termination of her employment on or about June 9, 2019.

34. Upon information and belief, the RIF disproportionately affected female GE employees.

35. Indeed, the RIF affected five (5) of the seven (7) female software engineers in Ms. Nichols' office.

36. Upon information and belief, Ms. Nichols' GE workplace responsibilities were taken over by younger, male GE employees not of foreign national origin.

37. At the time of her unlawful termination from employment, Ms. Nichols was protected from sex, age, and national origin discrimination by Title VII and the ADEA.

38. Upon information and belief, GE's decisions regarding the RIF and the related termination of Ms. Nichols were not based upon any neutral, legitimate business reasons, but were merely pretext for unlawful sex, age, and/or national origin discrimination. Ms. Nichols' termination occurred under circumstances that raise a reasonable inference of unlawful discrimination, and is indicative of GE's discriminatory bias against its older, female employees of foreign national origin.

39. GE's engagement in a pattern and practice of discrimination fostered a work environment charged with discrimination and hostile to Ms. Nichols and other Title VII and ADEA-protected employees, and GE would not have terminated Ms. Nichols' employment, nor taken the other discriminatory actions against her, but for Ms. Nichols' sex, age, and/or national origin.

40. Any reasons cited by GE for its decisions with regard to Ms. Nichols were pretextual.

41. Due to the acts and omissions of GE, Ms. Nichols was discriminated against in violation of Title VII and the ADEA.

42. Because the actions taken against Ms. Nichols were taken by supervisory employees at GE within the scope of their employment, GE is responsible for their actions based upon the doctrine of *respondeat superior.*

## COUNT I: CLAIM FOR SEX DISCRIMINATION IN VIOLATION OF TITLE VII

43. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

44. Plaintiff is a female and protected from sex discrimination by Title VII.

45. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with discrimination and hostile to Plaintiff and other female employees.

46. Defendants violated federal law by creating and permitting a work environment to exist that was discriminatory to Plaintiff and other female employees and by wrongfully terminating Plaintiff's employment.

47. Specifically, Defendants discriminated against Plaintiff by ostracizing and excluding her from company events, treating her differently from, and less favorably than, similarly situated male employees, subjecting her to other differential treatment on the basis of her sex, and including Plaintiff in a RIF that disproportionately affected female employees and resulted in the termination of Plaintiff's employment, all in violation of Title VII.

48. Defendants would not have terminated Plaintiff's employment, nor taken the other discriminatory actions against her, but for Plaintiff's sex. Alternatively, Plaintiff's sex was a motivating factor in Defendants' actions.

49. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

50. Prior to Plaintiff's termination from employment, Plaintiff was performing her work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

51. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

52. Any reasons cited by Defendants for Plaintiff's termination were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

53. The above-described acts by Defendants and employees of Defendants constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

54. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

### COUNT II:  CLAIM FOR NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

55. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

56. Plaintiff identifies her national origin as Russian and is protected from national origin discrimination by Title VII.

57. At all times material hereto, Defendants had an obligation to maintain a work environment that was not charged with national origin discrimination and hostile to Plaintiff and other foreign national employees.

58. Defendants violated federal law by creating and permitting a work environment to exist that was discriminatory to Plaintiff and other foreign national employees and by wrongfully terminating Plaintiff's employment.

59. Specifically, Defendants discriminated against Plaintiff by ostracizing and excluding her from company events, treating her differently from, and less favorably than, similarly situated non-foreign national employees, subjecting her to other differential treatment on the basis of her national origin, and terminating Plaintiff's employment, all in violation of Title VII.

60. Defendants would not have terminated Plaintiff's employment, nor taken the other discriminatory actions against her, but for Plaintiff's national origin. Alternatively, Plaintiff's national origin was a motivating factor in Defendants' actions.

61. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

62. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

63. Prior to Plaintiff's termination, Plaintiff was performing her work at a satisfactory level and meeting or exceeding Defendants' legitimate business expectations.

64. Any reasons cited by Defendants for Plaintiff's termination were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

65. The above-described acts by Defendants and employees of Defendants constitute national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

66. Plaintiff is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

**COUNT III:  CLAIM FOR DISCRIMINATION IN VIOLATION OF THE ADEA**

67. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

68. At the time of her termination from employment, Plaintiff was 57 years of age and protected from age discrimination by the ADEA.

69. Prior to Plaintiff's termination from employment, she was performing her work at a satisfactory level and meeting the legitimate business expectations of Defendants.

70. During her employment with Defendants, Plaintiff experienced unwelcome discrimination based upon her age, and was ostracized and excluded from company events, treated differently, and less preferably than younger employees, subjected to other discriminatory and differential treatment on the basis of her age, and ultimately was terminated from employment, all in violation of the ADEA.

71. Defendants' conduct towards Plaintiff was discriminatory and intentional, and no business-related legitimate reason justified the actions taken against her, as prior to Plaintiff's termination from employment, she was performing her work at a satisfactory level.

72. Defendants would not have terminated Plaintiff's employment, nor taken the other discriminatory actions against her, but for Plaintiff's age.

73. Any reasons cited by Defendants for Plaintiff's termination from employment were pretextual, as Plaintiff's work performance was meeting Defendants' legitimate business expectations.

74. Upon information and belief, after Plaintiff's termination, her job duties were taken over by one or more employees of Defendants, all of whom are younger than Plaintiff.

75. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer pecuniary loss.

76. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

77. The above-described acts by Defendants and employees of Defendants constitute age discrimination in violation of the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

WHEREFORE, Plaintiff Lioudmila Petrovna Nichols prays for judgment against Defendant General Electric Company and Defendant General Electric International, Inc. d/b/a GE Digital, and for lost wages and benefits, equitable relief, compensatory, punitive, and/or liquidated damages, together with prejudgment interest from the date of Ms. Nichols' termination from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

*Trial by jury is demanded on all issues on which Plaintiff is entitled to a trial by jury, including any question concerning whether Plaintiff's claims must be submitted to arbitration.*

        Respectfully Submitted,

        **LIOUDMILA PETROVNA NICHOLS**

        */s/ Thomas E. Strelka*
        Thomas E. Strelka, Esq. (VSB# 75488)
        L. Leigh R. Strelka, Esq. (VSB # 73355)
        N. Winston West, IV, Esq. (VSB # 92598)
        Brittany M. Haddox, Esq. (VSB # 86416)
        Monica L. Mroz, Esq. (VSB #65766)
        STRELKA EMPLOYMENT LAW
        Warehouse Row
        119 Norfolk Avenue, S.W., Suite 330
        Roanoke, VA  24011
        Tel:  540-283-0802
        thomas@strelkalaw.com
        leigh@strelkalaw.com
        winston@strelkalaw.com
        brittany@strelkalaw.com
        monica@strelkalaw.com

        *Counsel for Plaintiff*